IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **NAHEEM HARDISON** | : | **No. 18-168** |

## MEMORANDUM

PRATTER, J.                                                                                    September 9, 2021

Naheem Hardison seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Hardison argues that early release is warranted because he has medical conditions that place him at an increased risk of harm from the COVID-19 virus. For the reasons that follow, the Court denies Mr. Hardison's motion.

### BACKGROUND

#### I.   Mr. Hardison's Criminal Conduct

Mr. Hardison is serving a sentence for his role in the gunpoint robbery of a laundromat. On February 11, 2017, Mr. Hardison and two other men entered "Hong's Laundry- Matt," located in Philadelphia. One of the men, Raekwon Hackley, entered the laundromat first, and pointed a revolver at H.G., the laundromat's owner. Mr. Hardison later acknowledged that he knew that Mr. Hackley was going to brandish the revolver during the robbery. Mr. Hardison and the third individual, Saleem Kennedy, followed Mr. Hackley inside, and the three of them demanded money from H.G. They stole cash from the office desk, cash from H.G.'s wallet, a bag filled with coins, and H.G.'s phone. H.G. later stated that his insurance did not cover the robbery, and that business at his establishment decreased considerably because customers were afraid to return.

Mr. Hardison already had a criminal record at the time of this robbery. He had been convicted for possession with intent to distribute in 2009, a firearms conviction in 2009, and a contempt of court conviction in 2013. In July 2013, he violated probation and was sentenced to 18 to 36 months' incarceration.

Mr. Hardison pled guilty to one count of robbery and one count of using a firearm during a crime a violence. He was sentenced to 120 months' imprisonment on January 14, 2020. Mr. Hardison is serving his sentence at Federal Medical Center Devens, and has an anticipated release date of December 11, 2026. He has served approximately 38 months of his sentence and has credit for good conduct time of approximately 4 months, for total time served credit of approximately 42 months, or roughly one third of the incarceration time imposed.

## II. Mr. Hardison's Medical Conditions and Request for Compassionate Release

Mr. Hardison's medical records show that he is 33 years old, and suffers from end-stage renal disease. He received a kidney transplant when he was 12, but that kidney began to fail when he was 24. At that time, Mr. Hardison started dialysis. Mr. Hardison underwent evaluation for another kidney transplant at Temple University, but because of his incarceration, his evaluation was concluded in June 2018. At Federal Medical Center Devens, Mr. Hardison has continued to receive dialysis three times each week. Mr. Hardison also continues to receive his prescribed medications. Mr. Hardison is fully ambulatory and engages in all normal activities of daily living within the facility.

Mr. Hardison moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). In support of his motion, he relies on his medical diagnoses and his confinement at Federal Medical Center Devens, which he argues puts him at an increased risk of death or injury if he is infected with COVID-19, and decreases his chances of receiving a kidney transplant.

### III.  The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has stated that its "highest priority [is] to continue to do everything [it] can to mitigate the spread of COVID-19 in [its] facilities,"[1] and it has taken significant measures to protect the health of the inmates in its charge. These measures include severely curtailing visitation, limiting the movement of inmates, paying special attention to physical distancing, and screening and isolating new inmates. As directed by the Attorney General, the BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[2] Pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, the BOP may also "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" in the event the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. Pub. L. No. 116-136 § 12003(b)(2). In April 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion, beginning with facilities that have seen the greatest incidence of COVID-19 transmission thus far. The BOP has also undertaken efforts to vaccinate its staff members as well as all inmates. *See United States v. Roper*, No. 16-cr-335, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) ("Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate.").

Federal Medical Center Devens, the medical facility where Mr. Hardison is incarcerated houses 764 inmates. *See* FMC Devens, Federal Bureau of Prisons,

---

[1] BOP, *BOP Modified Operations* (last updated Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last visited September 8, 2021).

[2] This authority includes the ability to place an inmate in home confinement during the last six months or the remaining 10% of a sentence, whichever is shorter, and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement. 18 U.S.C. § 3624(c)(2).

https://www.bop.gov/locations/institutions/dev/ (last visited September 8, 2021). Currently, there are zero COVID-positive inmates and five COVID-positive staff at Federal Medical Center Devens.[3] During the course of the pandemic, 353 inmates and 65 staff recovered from the virus, and 11 inmates died.[4] The BOP has thus far fully vaccinated 354 staff members and 691 inmates at Federal Medical Center Devens—not accounting for those inmates who have declined vaccination.[5]

## LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). However, a defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) after exhausting all administrative remedies.[6] *United States v. Ackerman*, No. 11-cr-740-KSM-1, 2020 WL 5017618, at *2 (E.D. Pa. Aug. 25, 2020).

A court may grant a motion to reduce the term of imprisonment under § 3582 only if (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction; and (3) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Although Congress has not defined the term "extraordinary and compelling," the Sentencing Commission has issued an application note to its relevant policy statement which

---

[3] This data is current as of September 8, 2021, according to the BOP website, available at https://www.bop.gov/coronavirus.
[4] *Id.*
[5] *Id.*
[6] A defendant may move for compassionate release under § 3582 only after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government does not dispute that Mr. Hardison has exhausted his administrative remedies.

4

provides guidance for defining this term. It provides that a defendant's non-terminal illness may be an extraordinary and compelling justification if "the defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.[7]

Section 3553(a) directs courts to consider multiple factors, including (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). The applicable Sentencing Commission policy statement also requires a court to determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" prior to release. U.S.S.G. § 1B1.13. The defendant bears the burden of showing that a reduction in sentence is proper. *See Ackerman*, 2020 WL 5017618, at *3 (citing *United States v. Thornton*, 2:18-cr-167-1, 2020 WL 4368155, at *3 (W.D. Pa. July 29, 2020)).

### DISCUSSION

Mr. Hardison argues that his renal disease, which puts him at an increased risk of a severe illness if he is infected with COVID-19, qualifies as an extraordinary and compelling reason for

---

[7] Although § 3582(c)(1)(A) mandates that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," a number of courts have held that "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for amendments to § 3582(c)(1)(A) made by the First Step Act of 2018. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. Apr. 1, 2020). *See also United States v. Spencer*, No. 15-cr-562, 2021 WL 565403, at *4 (E.D. Pa. Feb. 12, 2021). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 582(c)(1)(A)(i)." *Rodriguez*, 451 F. Supp. 3d at 398.

5

his release.[8] He also argues that his brother is willing to provide him a kidney transplant, but that, because of unspecified "medical and administrative factors," (see Doc. No. 49 at 8), a transplant is less likely if he is in custody than if he was released.

The Court certainly does not take Mr. Hardison's health conditions lightly. As the Government concedes, Mr. Hardison's renal disease is recognized by the CDC as a COVID-19 risk factor.[9] However, the Court must note that Mr. Hardison refused to be vaccinated against COVID-19. He was offered the Moderna COVID-19 vaccine in February 2021, and again in March 2021, and refused the vaccine both times. Mr. Hardison did not give any medical reason why he should not receive the vaccine, but simply declined, saying that he would "consider it" in the future. While Mr. Hardison was, of course, within his rights to make this choice, his argument that he risks death or serious injury from COVID-19 "rings somewhat hollow in light of his affirmative choice to refuse a highly-effective vaccine." *United States v. Kassis*, No. 19-cr-449, 2021 WL 3489816, at *3 (E.D. Pa. Aug. 9, 2021). "If the Court was to hold that the mere refusal to be vaccinated represents an extraordinary and compelling reason to warrant release, then inmates would be incentivized to refuse vaccinations." *Id. See also United States v. Ortiz*, No. 18-cr-264, 2021 WL 1422816, at *4 (E.D. Pa. Apr. 15, 2021) (noting that a defendant

---

[8] Mr. Hardison also argues that, short of releasing him, the Court could order home confinement at his mother's home with electronic or GPS location monitoring. However, the Court does not have authority to grant a transfer to home confinement. "District Courts considering the CARES Act § 12003 and the Attorney General's directive consistently conclude that the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." *United States v. Torres*, No. 18-cr-414, 2020 WL 3498156, at *6 (E.D. Pa. June 29, 2020) (quoting *United States v. Delacruz*, No. 17-cr-77, 17-cr-201, 2020 WL 3405723, at * 5 (M.D. Pa. June 19, 2020)). *See also United States v. Pettiway*, No. 08-cr-129, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) (noting that discretion to order home confinement "rests solely with the Attorney General and the BOP Director"). Therefore, the Court will only consider whether Mr. Hardison is entitled to early release, not home confinement.

[9] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention (Aug. 20, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 26, 2021).

"cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk") (quoting *United States v. Jackson*, No. 15-cr-260(7), 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021)); *United States v. Redman*, No. 10-cr-233, 2021 WL 1737485, at *1 (W.D. Pa. May 3, 2021) (denying compassionate release to defendant suffering from kidney disease who had refused a COVID-19 vaccine, which the Court found "negate[d] any otherwise compelling medical reason for release"). Accordingly, the Court concludes that Mr. Hardison has not presented extraordinary and compelling reasons for his release.

Even if Mr. Hardison could demonstrate that extraordinary and compelling reasons exist—which the Court seriously doubts—the Court would still deny release in light of the § 3553(a) factors. First, the Court agrees with the Government's assessment that Mr. Hardison continues to present a danger to the community. Mr. Hardison has had many chances to change his behavior. Instead, his most recent crime shows an escalation of criminal activity, putting the lives of people in his community at risk. While Mr. Hardison argues that this behavior was an aberration driven by a sense of hopelessness when he learned of issues in receiving a kidney transplant, the Court does not find this explanation compelling. Mr. Hardison has been under treatment for kidney disorders for most of his life, having received a kidney transplant when he was 12 years old. Mr. Hardison also notes that shortly before he committed the robbery, he found that his brother was a potential kidney donor, and Mr. Hardison was undergoing evaluation for another transplant. While it is understandable that Mr. Hardison was depressed by his medical condition, the Court cannot see how this situation would be materially different were Mr. Hardison granted early release.

7

Mr. Hardison has also failed to show that release, after he has served only 42 months of a 120-month sentence, would reflect the seriousness of his offense, promote respect for the law, or provide just punishment for the offense. The Court acknowledges Mr. Hardison's argument that the 120-month sentence was imposed in part pursuant to a mandatory minimum, and that the sentencing guideline range without the mandatory minimum would have been 78 to 97 months. But even if Mr. Hardison had earned only a 78-month sentence—which is not the case—he would still have served only approximately half of that theoretical sentence. Release under these circumstances would be inconsistent with the § 3553(a) factors. *See United States v. Henderson*, No. 18-cr-433, 2021 WL 409980, at *4 (E.D. Pa. Feb. 5, 2021) (denying compassionate release to a 53-year-old inmate with multiple severe medical conditions who had served only 30 months of a 48-month sentence); *United States v. Drexler*, No. 16-cr-444, 2021 WL 3271260, at *4 (E.D. Pa. July 30, 2021) (denying compassionate release to an inmate who had only served 60 months of a 120-month sentence). Accordingly, the Court declines to grant Mr. Hardison early release.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Hardison's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE